White, J.
 

 On behalf of the plaintiff, it has been insisted, that he having the elder grant, the legal title is vested in him; and that he is of course entitled to judgment in the action; that the entry of the defendant cannot be noticed in this Court; but if the entry can be noticed, that it will not avail the defendant; because the party had no right by his entry to cross the line of a section, which he has done.
 

 On the other side it has been contended that if upon the general principle the entry could not be noticed in a court of law, yet it’may be done in this case, because the parties have agreed that the entry, as well as other parts of the title, may be decided upon by the Court.
 

 But it is further said that the entry may be noticed in any case, as it is a constituent part of the title, which is as much a matter of record as the grant itself; and that White’s title must now be viewed as if his grant had issued on the day his entry was made, which is prior to the entry on the other side, — that White had a right to cross the line of a section, and take a part of his land in each section, if he chose, as the law did not forbid it.
 

 It will be most convenient to dispose, in the first place, of the circumstance which the defendant’s counsel allege takes this case out of the general principle. Upon this point, it is thought, that as this is an action at law, if an entry cannot, in a court of law, be viewed as a part of the legal title, that the mere circumstance of this being an agreed case can make no difference. Suppose the jury, on finding a special verdict, or the parties in stating a case agreed, where the cause is pending at law, put down a fact which a court of law as such cannot notice, will that circumstance transform a court of law either into a court of equity or into arbitrators ? It is supposed it will not. A brings an action of ejectment against B. After the cause is at issue, the parties make a case agreed, and state these facts, that the land in dispute was the property of C; that on the 1st day of August, 1800, he, for a valuable consideration, sold and covenanted to convey it to A, the plaintiff; that on the 5th. of August, in the same year, C sold and conveyed, by a regular conveyance, the same land to B, the defendant ; and that B, at the time of receiving this conveyance, knew of A’s prior purchase ; would any person contend that the Court must at law adjudge that the title of the land was in A, and that he must recover in ejectment ? It is supposed not. Yet it is believed all men would agree that in a court of equity A would be considered as having the best title to the land. It is therefore conceived that in the case now before the Court, if the entry is viewed as evidence, only of an equitable and not a legal title,
 
 *23
 
 that the circumstance of this being an agreed case will not place it in a situation different from cases in which parties are not disposed to come to any agreement of facts.
 

 The general question will then remain to be decided, where both parties have made their entries, and procured their grants under the laws of Tennessee, can a court of law, upon a trial of the title, receive an entry as evidence of title, which shall control the operation of a grant ?
 

 To solve this question, it will perhaps be useful to inquire into the situation of grants founded upon special entries, made under the laws of North Carolina, which are at all events, to a certain extent, in force in this State.
 

 2. Into the situation of grants founded upon removed warrants under the same laws: And,
 

 3. Endeavor to ascertain whether grants, issued under laws passed by the State of Tennessee, ought to be viewed as falling within the principle of grants founded upon special entries or upon the principle of grants issued, upon removed warrants.
 

 1. As to the situation of grants founded upon special entries. By referring to the acts of North Carolina in 1777, Ird. 233, § 5, and 1783, Ird. 447, § 11, I find what the Legislature consider a special entry. When an individual discovered a piece of vacant land which he wished to purchase from the State, it was his duty to describe it in writing, in such manner that any other individual, acquainted with the same tract, could, by examining his description, acquire a knowledge of what tract was thus described. This description, with the purchase-money, was to be handed to the entry-taker, whose duty it was to transcribe it in its proper place in the book of entries. This book was a record accessible to every citizen. After the lapse of three months it was the duty of every entry-taker, to issue a warrant upon the entry, which was nothing more than a transcript of the entry, with a direction to the surveyor to survey for the enterer the land described in the entry. Upon receiving this warrant, the surveyor was to make the survey; return plats thereof, with the warrant to the secretary, who was to issue the grant; and thus, the title was complete. As every citizen who could pay the consideration money was equally entitled to become a purchaser, it sometimes happened that two individuals each entered and obtained for himself a patent for the same piece of land.
 

 An ejectment is commenced by A, who has the eldest entry and youngest grant, against B, who has the youngest entry and oldest grant. Upon the trial, if the grant is alone evidence of title at law, B, who has the eldest, must unquestionably succeed. How have the courts determined ? For the last twelve or fifteen years, almost invariably, as is believed, that A, who has the eldest entry, shall stand in the same situation as if his grant had been issued on the day he made his entry ; provided the entry itself described the land so particularly that B, by examining it, might
 
 *24
 
 have known that A had previously purchased. Why have the courts thus determined ? One reason no doubt was, that the entry was as much a matter of record as the grant; and as the State could not be supposed to intend a fraud upon A it might have been considered that B, who knew of the prior sale to A, imposed upon the officers of the State, and procured them to execute, in form, to him, a grant for land which had been in substance previously sold to A. The courts therefore considered that although B had the prior grant, yet it passed to B no interest in the land, as the interest had been previously vested in A by his entry; and therefore B’s grant was null, and operated nothing, even in law. But it has been argued that the reasons for this determination are to be found in the Acts of 1786 and 1787, where the Legislature expressly declares that the grant shall be void. From an examination of the Act of 1786, made perpetual by that of 1787, it seems that they are declaratory of the meaning of the Acts of 1777 and 1783. It is not with me to say now in what manner the question ought to be decided, if it were
 
 res integra.
 
 After the decisions going on, in the same way, so great a length of time, the inconvenience of changing the law upon this point would be felt too sensibly to he submitted to with patience.
 

 2. How stands the case as it respects grants upon removed warrants ?
 

 Where two individuals had each made an entry for the same piece of land, inasmuch as both could not hold, the Legislature, in the Act of 1784, Ird. 483, § 7; 1786, Ird. 590; 1789, Ird. 665 and 540, have made provision that the second enterer may have his warrant removed from the tract first entered, and have it surveyed upon any vacant and unappropriated land he could find, and obtain a grant for the land thus surveyed. Under these provisions nothing is said about entering the land to which the warrant is thus removed ; and as it respects warrants issued from John Armstrong’s office, and from the county offices, no provision is made for a second entry, except, perhaps, as relates to military warrants. Suppose two individuals to have removed warrants, and each in search of land out of which to have them satisfied. C owns one warrant, and D the other. C’s is surveyed on the first day of June, 1794, D’s on the 1st day of July following. D obtains his grant the first day of October in the same year, and C obtains his the 15th day of the same month. Both these surveys and grants are for the same piece of land. A contest arises between them, and how have the courts determined ? Uniformly in favor of D, the first grantee. Why ? Because the survey is not made a matter of record, and the reasons which would favor a first entry do not extend in favor of the first survey. In the case of grants on removed warrants, the first grantee has been considered by the laws of North Carolina as having the title. Still, I admit some judges have even doubted this. In the case of Shelby and Shannon, on a motion for a new trial, one judge of the late
 
 *25
 
 Superior Court went upon the ground of priority of survey in giving his opinion. Afterwards, upon the second trial, when former determinations upon that point were brought to his view, he changed his opinion.
 

 3. It now remains to consider what will be most correct as it respects grants issued by the officers of Tennessee upon warrants that would have been considered removed warrants under the laws of North Carolina.
 

 What is now Tennessee formed a part of North Carolina until 1789. This country was then ceded by North Carolina to the United States. That cession was accepted by Congress. From the acceptance of the cession until 1796 this was a territorial government. The State of Tennessee that year was formed. Previous to the year 1789 North Carolina had issued many warrants for lands that remained unsatisfied. When ceding the country she reserved the power to herself to satisfy these claims. Grants had not been issued upon the whole of them when Tennessee was formed. The latter conceived she was interested in the vacant lands within her limits after the fair claims were satisfied, and feeling herself degraded by another State holding the records respecting titles to lands in this, and wishing to acquire the right to issue grants upon the unsatisfied claims, a negotiation was set on foot, the result of which was, that in 1804, an agreement was entered into between Tennessee and North Carolina, by which Tennessee acquired • the power of perfecting titles upon unsatisfied warrants. The United States were to be consulted upon this subject; the result with them was, that a compromise took place as to the vacant land that might be left within certain specified bounds, after certain claims against North Carolina were satisfied, and after certain appropriations should be made, which were specified in the Act. Thus Tennessee acquired the power to issue grants upon such warrants as were honest and fair claims against North Carolina. /
 

 One of the first steps taken by Tennessee after she conceived herself vested with this power was to pass the Act, in consequence of which the titles now before the Court were issued. In the Act of 1806, after boards of commissioners are established to ascertain the fair claims against North Carolina, a mode is pointed out by which grants are to be issued. The State is to be divided into districts, within each of which a surveyor is to be appointed, and his district is to be divided into sections of six miles square. A time i's also fixed when those who might have removed warrants that had been adjudged valid should draw for priority of entry. When the holder of a removed warrant selected a piece of ground for which he might wish to obtain a grant, he is directed to make a location, a written description of the land, and carry this with his warrant to the surveyor, who is to enter the location in his entry-book. This book is to be kept for the inspection of all
 
 men;
 
 it is to be kept at a place pointed out
 
 *26
 
 within the district; and after the entry is made the land is to be surveyed, and upon the survey the grant is to issue. This law required as much strictness in making entries as any that had ever been in force in this country. Many complain of it because it required too much strictness.
 

 When the Legislature required these removed warrants to he entered, what did they intend ? Was it not to place them on the same footing with special entries under the laws of North Carolina? They must have known the laws and the determination of the courts, both as it respected grants on special entries, and grants on removed warrants. Suppose the Legislature of North Carolina had, in the year 1788 or 1789, passed an Act making the same provisions for re-entering removed warrants that are made in the Act of 1806, would it have been conceived that they did not intend the enterer should in that case have the same benefit the first enterers were entitled
 
 to
 
 in other cases ? They assuredly would; there could have been no reason for a difference. All the acts upon the same subject would have been considered in
 
 pari materia.
 
 If this be the case, Tennessee having passed the Act can make no difference; she having derived the power from North Carolina to perfect the titles, as to this point, her Act can be as much connected with the laws of North Carolina, passed upon the same subject, as if this Act had been passed by North Carolina.
 

 Upon the whole, therefore, it seems that whatever is correct as to priority of titles, in the case of special entries under the laws of North Carolina, must be equally so as it respects entries under the Act of 1806.
 

 It has been urged that provision has been made in the Act of 1806, for
 
 caveats,
 
 and that the party is foreclosed from relying upon his entry, after he has suffered his adversary to procure a grant. Precisely the same argument could be used as to special entries under the laws of North Carolina.
 

 The opinion upon this point is that the entries can be regarded in this cause as evidence of title, and that the elder entry, followed by a grant, will vest a title from the date of the
 
 entry;
 
 provided the entry itself is such as the law sanctions.
 

 Let us then examine the entry; no person has doubted but that it is sufficiently special, yet it is said it ought not to have crossed the sectional line. What object was to be answered by these sectional lines ? So far as respects this point, the great object was, that upon looking upon the map of the district any individual might know what land was appropriated, and what was vacant in each section.
 

 It has been insisted that this object is as well attained when a part of the entry is in two different sections as if entirely in one. This argument has not been controverted; and with me it seems conclusive. The law does not prohibit the going into two sections'with the same entry;
 
 *27
 
 and the Court ought not to do so by construction; it would double the expense without any benefit.
 

 My opinion therefore is that judgment ought to be entered for the defendant.
 

 Williams, J. and Campbell, J. concurred.